UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X     03 CV 4105 (NG) (VVP)
MAURICE OPARAJI,

                              Plaintiff,

              -against-                                     OPINION AND ORDER

NEW YORK CITY DEPARTMENT OF
EDUCATION; WILDCAT SERVICE
CORPORATION; JOHN V. LINDSAY WILDCAT
ACADEMY CHARTER SCHOOL; WILDCAT
SECOND OPPORTUNITY SCHOOL; LAWRENCE B.
BECKER; CARYL COHEN; ROBERT ZWEIG; and
ROBERT HICKSON,

                              Defendants.
--------------------------------------------------------------------X

GERSHON, United States District Judge:

        Acting *pro se*, plaintiff has filed four related actions arising from the same core set of facts,

all of which are currently pending before this court.  The instant action ("Oparaji III") was filed in

the Southern District of New York on June 23, 2003 and transferred to this court on August 13,

2003.  *Oparaji v. New York City Department of Education*, docket number 00 CV 5953 ("Oparaji

I"), was filed in this court on October 3, 2000.  *Oparaji v. New York City Board of Education*, docket

number 02 CV 3900 ("Oparaji II"), was filed in this court on July 8, 2002.  *Oparaji v. United

Federation of Teachers*, docket number 03 CV 3927 ("Oparaji IV"), was filed in the Southern

District of New York on July 8, 2002 and transferred to this court on July 22, 2003.  Oparaji I and

Oparaji II were consolidated for all pre-trial purposes on September 16, 2002.

        In the instant action, four motions are currently pending before the court: (1) a motion to

dismiss the original complaint made by defendants Wildcat Service Corporation, John V. Lindsay

Wildcat Academy Charter School ("Wildcat Academy"), and Wildcat Second Opportunity High School (collectively, the "Wildcat Defendants"); (2) a motion to dismiss the First Amended Complaint made by the Wildcat Defendants; (3) a motion to dismiss the First Amended Complaint made by defendants New York City Department of Education (the "Dept. of Education," formerly the New York City Board of Education), Lawrence B. Becker, Caryl Cohen, Robert Zweig, and Robert Hickson (collectively, the "NYC Defendants"); and (4) a motion by plaintiff for leave to file a supplemental pleading. The Wildcat Defendants' motion to dismiss the original complaint is dismissed as moot. For the reasons set forth below, the Wildcat Defendants' remaining motion to dismiss is granted in its entirety, the NYC Defendants' motion to dismiss is granted in its entirety, and plaintiff's motion for leave to file a supplemental pleading is denied. The motions currently pending before the court in Oparaji IV will be addressed in a separate opinion.

## PROCEDURAL HISTORY

All four of the Oparaji actions concern allegations of employment discrimination. To set the instant action in proper context, the court will briefly outline the procedural history of Oparaji I and Oparaji II. Oparaji I was commenced by complaint filed on October 3, 2000. Defendants served and filed an answer on December 28, 2000. At a conference before the Honorable Viktor V. Pohorelsky, United States Magistrate Judge, held on October 21, 2002, plaintiff requested leave to amend the complaint to add one additional claim, and Judge Pohorelsky set a briefing schedule. Plaintiff served the proposed amended complaint by the deadline, and defendants' counsel subsequently advised the court that defendants would not oppose it. Accordingly, Judge Pohorelsky entered an order, dated December 26, 2002, granting plaintiff leave to file the proposed amended complaint and directing

defendants to serve and file an answer within thirty days of receiving notice of filing. The amended complaint that plaintiff filed, however, was substantially different from the proposed one that he had previously served on defendants. It was five pages longer and contained seven additional claims. Following a hearing, Judge Pohorelsky determined that plaintiff had attempted to deceive the court. As a result, he denied plaintiff's application to file the second proposed amended complaint and declared that no further motions to add new claims to the complaint would be considered by the court. Nevertheless, Judge Pohorelsky afforded plaintiff the opportunity to file the version of the proposed amended complaint that he had served on defendants, but plaintiff declined to do so, choosing instead to proceed on the original complaint. Judge Pohorelsky's decision was affirmed by this court by order dated February 4, 2003. Plaintiff's subsequent motions for reconsideration were denied.

Oparaji II was commenced by complaint filed on July 8, 2002. An amended complaint was filed shortly thereafter on July 15, 2002 and a second amended complaint was filed on October 25, 2002. Defendants served and filed an answer to the second amended complaint on December 13, 2002. On January 16, 2003, plaintiff sought leave to amend the complaint further. The proposed third amended complaint contained many of the claims that formed the basis of plaintiff's deception in Oparaji I. In a report and recommendation dated September 10, 2003, Judge Pohorelsky recommended denying leave to amend with respect to one proposed new claim on the ground that it was duplicative of a claim already contained in the second amended complaint. Judge Pohorelsky recommended denying leave to amend with respect to the other proposed new claims on the ground of futility. This court adopted Judge Pohorelsky's report and recommendation by order dated August 30, 2004. Plaintiff's subsequent motions for reconsideration were denied.

Oparaji III was commenced in the Southern District of New York by complaint filed on June 23, 2003 and transferred to this court on August 13, 2003. The Wildcat Defendants filed a motion to dismiss the original complaint on September 17, 2003. Before the motion was fully briefed, plaintiff filed an amended complaint (the "First Amended Complaint") on December 8, 2003. The court accepted the First Amended Complaint and set a new briefing schedule. Both the Wildcat Defendants and the NYC Defendants filed motions to dismiss the First Amended Complaint on February 27, 2004. While that motion was pending, plaintiff, on September 20, 2004, filed a motion for leave to file a supplemental pleading.

## FACTS

All factual allegations in the First Amended Complaint are accepted as true for the purposes of the pending motions and all reasonable inferences are drawn in favor of plaintiff.

Plaintiff is a native of Nigeria and a naturalized citizen of the United States. He holds permanent certification from New York State as a Special Education teacher and a Business & Distributive Education teacher.

## I.     Plaintiff's Employment as a New York City Public School Teacher

During the summer of 1999, plaintiff attended a job fair at which he was recruited to work for the New York City public school system. Plaintiff was initially assigned to Intermediate School 82X, but was reassigned to Carter G. Woodson Elementary School prior to the start of the school year. Plaintiff commenced working at Carter G. Woodson Elementary School on September 7, 1999. He was terminated on October 5, 1999 and replaced with an uncertified teacher of the same ethnic

origin as the school's principal. (Plaintiff does not specify what that ethnic origin is.) Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2000 alleging that his termination from Carter G. Woodson Elementary School was the result of discrimination on the basis of national origin. The EEOC issued plaintiff a right to sue letter on September 18, 2000.

In June 2000, plaintiff was assigned to Springfield Gardens High School as a teacher of Accounting & Business Practice. On October 10, 2000, defendant Hickson, the principal of the school, told plaintiff that he had been informed of plaintiff's pending EEOC charge, and instructed plaintiff that he would have to choose between the suit and the job. "You cannot have it both ways," the principal said. Plaintiff was injured on October 19, 2000 and was on sick leave from that date until January 2, 2001. During that period, plaintiff received from school officials a "series of letters, corrective memos, warnings, and request[s] for medical examinations." First Amended Complaint ¶ 43. On January 11, 2001, shortly after plaintiff's return to work, plaintiff's lessons were observed by a school district official. The next day, plaintiff met with the principal and his union representative. At the meeting, he was informed that the district had granted him "a two-week grace period in which plaintiff would decide on whether to drop his EEOC charge and lawsuit against the Board." First Amended Complaint ¶ 48. Plaintiff was then presented with three letters: The first was a report of the prior day's observation. The second was a notice of discontinuance of plaintiff's service at Springfield Gardens High School. The third was a notice of reassignment to District 77. On April 18, 2002, plaintiff filed a second charge with the EEOC alleging that his termination from Springfield Gardens High School was the result of retaliation for filing the first EEOC charge. The EEOC issued plaintiff a right to sue letter on May 29, 2002.

Plaintiff worked at Martin Van Buren High School from January 23, 2001 to February 15,

2001. During that period, he served first as a visitor's attendant in the principal's office and then as a library attendant. On February 5, 2001, defendant sent a letter to John W. Lee, Superintendent of Queens High Schools, complaining of harassment and intimidation, and stating that he had been denied leave under the Family and Medical Leave Act ("FMLA"). Plaintiff was terminated on February 15, 2001.

Plaintiff received a letter dated June 13, 2002 from defendant Becker, Director of Human Resources, denying his application for the issuance of teaching licenses in the following subject areas: Accounting & Business, Computer Literacy, Account DHS, and Typing JHS. (Plaintiff does not allege when the application was made.) The letter, annexed to the First Amended Complaint as exhibit 35 and incorporated therein by reference, stated that plaintiff's application was denied "due to the unsatisfactory rating for excessive absences, ineffective teaching, lack of respect for colleague[s] and supervisors and discontinuance of probationary services." The letter noted that plaintiff had been given the opportunity to review those findings with the Dept. of Education's Office of Personnel Investigation, and that he had the right to appeal the decision. In accordance with the procedures set forth in the letter, plaintiff appealed the denial of his license to the Division of Human Resources on June 19, 2002. The appeal was denied by letter dated January 3, 2003 from defendant Cohen, Deputy Executive Director of Human Resources.

## II.    Plaintiff's Application for a Position as a Wildcat Teacher

Plaintiff applied for a position as a computer application instructor at the Wildcat Academy. Following an interview on August 26, 2002, he was given a conditional offer of employment, subject to a reference check. Officials from the Wildcat Academy subsequently contacted Hickson, principal

6

of Springfield Gardens High School, for a reference.  The offer of employment extended to plaintiff

was withdrawn on August 30, 2002.  On October 11, 2002, plaintiff filed a third charge with the

EEOC, alleging that the NYC Defendants denied his application for certain licenses to teach and

provided a negative reference to the Wildcat Defendants in retaliation for his filing the prior two

EEOC charges.  The third EEOC charge was addressed only to the Dept. of Education; it did not

name the Wildcat Defendants as respondents.  In connection with this charge, the EEOC issued a

right to sue letter to plaintiff on May 28, 2003.


## III.    Claims Raised in the First Amended Complaint

Plaintiff's First Amended Complaint sets forth six "counts."  The first count alleges that all

defendants engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e-2000e-17, ("Title VII") by:

(a)    failing or refusing to issue plaintiff with license to teach Accounting and Business based on plaintiff's permanent certification in Business and Distributive Education.

(b)    failing or refusing to issue him with license to teach Special Education based on plaintiff's permanent certification in Special Education.

(c)    failing or refusing to hire plaintiff;

(d)    causing prospective employers from hiring plaintiff by providing negative reference;

(e)    failing or refusing to take appropriate action to remedy the effects of the discriminatory and retaliatory treatment of plaintiff;

(f)    subjecting plaintiff to disparate discipline, including denying plaintiff's application for licenses;

(g)    failing to take appropriate action to eliminate the discriminatory and

7

retaliatory policies and practices and to correct the present effects of those policies and practices; and

(h)     refusing promptly and effectively to investigate and to take prompt and effective steps to remedy and prevent the conduct described above.

First Amended Complaint ¶ 62.

The second count alleges that the Dept. of Education, Becker, and Cohen violated the civil rights acts codified at 42 U.S.C. §§ 1981, 1983, and 1985 ("Section 1981," "Section 1983," and "Section 1985," respectively) by:

(a)     denying plaintiff license to teach;

(b)     retaliation of plaintiff's protected activities to his national origin discrimination;

(c)     denying plaintiff right to earn a living;

(d)     refusing to issue teaching license in Computer literacy;

(f)     refusing to issue teaching license in Accounting DHS;

(g)     refusing to issue teaching license in Typing JHS;

(h)     causing John V. Lindsay Wildcat Academy Charter School to discriminate against plaintiff;

(i)     not according plaintiff procedural due process prior to denying his application for reasons stated in the letter dated June 13, 2002;

(j)     not according plaintiff procedural due process prior to denying his application for reasons stated in the letter dated January 3, 2003.

(k)     using threats, intimidation, and harassment on plaintiff;

(l)     interfering with plaintiff's livelihoods;

(m)     denying plaintiff job;

(n)     denying plaintiff employment enjoyment; and

(o)     the defendant acted because of the plaintiff's national origin and because plaintiff filed EEOC charge against New York City Department of Education.

First Amended Complaint ¶ 64.

The third count alleges that all defendants engaged in a civil conspiracy to prevent plaintiff from working at the Wildcat School. The fourth count alleges that the NYC Defendants violated the Americans with Disabilities Act, Pub. L. 101-336, 104 Stat. 327 (1990), ("ADA") by asking plaintiff to submit to a medical examination "inconsistent with business necessity." First Amended Complaint ¶ 69. The fifth count alleges that the NYC Defendants violated the Family and Medical Leave Act, Pub. L. 103-3, 107 Stat. 6 (1993), ("FMLA") by denying his application for leave, "inconsistent with business necessity." First Amended Complaint ¶ 72.

The sixth and final count alleges that all defendants committed violations of various provisions of New York statutory and common law, as follows:

(a)     libel and slander of the plaintiff;

(b)     false statement against the plaintiff;

(c)     abuse of process against the plaintiff;

(d)     intentional infliction of emotional distress upon the plaintiff; and

(e)     Violation of rights otherwise guaranteed to the plaintiff under the laws and constitution of the State of New York.

First Amended Complaint ¶ 74.


## V.     Proposed Supplemental Pleading

In his motion for leave to file a supplemental pleading, plaintiff alleges that, in July 2003, he applied to the Excelsior Teacher Initiative, run by the Dept. of Education, for a position as a

special education teacher, and that his application was denied on August 5, 2003. Plaintiff further alleges that the denial occurred in retaliation for the charges that he filed with the EEOC. Plaintiff requests the court's permission to supplement the First Amended Complaint with a Title VII claim based on these factual allegations, and to add as defendants in this action three individuals with whom he corresponded in connection with his application.

## DISCUSSION

### I.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper only when it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiff's allegations. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The task of the court in ruling on a Rule 12(b)(6) motion merely is to assess the legal feasibility of the complaint, not to assay the weight of the evidence that might be offered in support of it. *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). The court is required to accept as true all factual allegations in the complaint, and to draw all reasonable inferences in favor of the plaintiff. *Id.* Moreover, *pro se* complaints, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers and are to be construed liberally on a motion to dismiss. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997).

## II.    Claims against the NYC Defendants

### A.    *Title VII Claims*

#### 1.    Substantive Provisions of Title VII

Title VII provides that it shall be "an unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.§ 2000e-2(a)(1).  To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that (1) plaintiff belongs to a protected class, (2) plaintiff was qualified to perform the duties of the job at issue, (3) plaintiff suffered an adverse employment action, and (4) the circumstances surrounding that action permit an inference of discrimination. *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).

Title VII also provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) plaintiff was engaged in an activity protected under Title VII, (2) the employer was aware of plaintiff's participation in the protected activity, (3) the employer took adverse action against plaintiff, and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003).

## 2.    Procedural Requirements of Title VII

As a pre-requisite to filing a civil action, Title VII requires an aggrieved individual to file a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). In jurisdictions, such as this one, in which there exists an agency charged with enforcing state or local prohibitions against employment discrimination, the statute provides a 300 day limitations period for filing such charge. 42 U.S.C. § 2000e-5(e)(1). Allegations of discrete acts of discrimination that occurred prior to the 300 day period are time-barred, even if related to acts that occurred within the 300 day period. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). If the EEOC declines to pursue legal action with respect to the charge, it will issue a "right to sue" letter to the party who filed the charge. The party then has 90 days from receipt of the letter to commence a lawsuit. 42 U.S.C. § 2000e-5(b).

## 3.    Liability of Individual Defendants

As an initial matter, the court notes that individual defendants are not subject to personal liability under Title VII. This is true even with respect to individual defendants who had supervisory control over the plaintiff. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[T]he district court properly dismissed [plaintiff's] Title VII claims against the individual defendants."); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII."). Accordingly, all Title VII claims asserted against Becker, Cohen,

Zweig, and Hickson are dismissed.

### 4. Claims Asserted against the Dept. of Education

With respect to the Title VII claims asserted against the Dept. of Education, plaintiff alleges five discrete adverse employment actions: (1) his termination from Carter G. Woodson Elementary School; (2) his termination from Springfield Gardens High School; (3) his termination from Martin Van Buren High School; (4) the denial of his application for certain teaching licenses; and (5) the provision of a negative reference to officials at the Wildcat Academy. The first of these is duplicative of a claim asserted in Oparaji I, and, in any event, is time-barred. Plaintiff alleges that his termination from Carter G. Woodson Elementary School was the result of discrimination on the basis of his national origin. The termination occurred on October 5, 1999. Plaintiff filed a timely charge with the EEOC on May 8, 2000, and the EEOC issued a right to sue letter to plaintiff on September 18, 2000. But this suit was not commenced until June 23, 2003, far more than 90 days after plaintiff's receipt of the letter. As a result, the claim concerning plaintiff's termination from Carter G. Woodson Elementary School is barred by the 90 day statute of limitations for filing suit following the issuance of a right to sue letter.

The remaining adverse employment actions alleged by plaintiff in this suit are duplicative of claims asserted in Oparaji II. As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). This is because a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139.

Since the Title VII claims arising from plaintiff's termination from Springfield Gardens High School, plaintiff's termination from Martin Van Buren High School, the denial of plaintiff's application for certain teaching licenses, and the provision of a negative job reference to plaintiff's prospective employer all appear in the second amended complaint in Oparaji II, to which the NYC Defendants interposed an answer prior to the commencement of this suit, the court exercises its general administrative power to dismiss these claims as duplicative.

### B. *Violations of the Civil Rights Acts*

#### 1. **Section 1983 Claims**

To state a claim under Section 1983, a plaintiff must allege that the defendants, acting under color of state law, deprived him of a federally protected right, such as a constitutional right. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). To prevail against a municipal defendant, such as the Dept. of Education, a Section 1983 claimant must demonstrate that the deprivation was caused by a custom or policy of the municipality; the claim may not be based simply on a theory of *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). An action may not be brought under Section 1983 to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII. *Patterson*, 375 F.3d at 225 (citing *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir. 1993)); *see generally City of Rancho Palos Verdes v. Abrams*, ___ U.S. ___ (2005) ("The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."). A Title VII plaintiff is not precluded from bringing a concurrent action under Section 1983, however, if the claim asserted is based on a distinct violation of a

constitutional right. *Id.*

Plaintiff's allegations that he suffered retaliation for filing charges with the EEOC do not implicate any constitutional rights; they are merely restatements of his Title VII retaliation claims. Accordingly, plaintiff's allegations of retaliation fail to state a claim under Section 1983. On the other hand, plaintiff's allegations that he was denied procedural due process, and that he suffered intentional discrimination on the basis of his national origin, do implicate his rights under the Constitution. The court will consider both of these sets of allegations individually.

### a.    Denial of Procedural Due Process

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). Analysis of a procedural due process claim consists of two questions: The first asks whether there exists a liberty or property interest that has been interfered with by the State. The second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Shakur v. Selsky*, 391 F.3d 106 (2d Cir. 2004) (citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Here, plaintiff claims that his application for certain teaching licenses was denied without due process of law. But his claim fails the first prong of the procedural due process analysis because he does not have a constitutionally protected interest in the licenses. Whether an applicant has such an interest depends on whether the applicant has a "legitimate claim of entitlement" to the issuance of the licenses in question, or merely a "unilateral expectation of it." *Roth,* 408 U.S. at 577; *accord*

*Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985).  Under New York law, the issuance

of a license to teach in the New York City public schools is considered a privilege, rather than an

entitlement, within the discretion of the Dept. of Education.  *See Arrocha v. Board of Education*, 93

N.Y.2d 361, 363 (1999) ("The Board's decision denying petitioner the privilege of a teaching license

is the type of administrative action that, at common law, was subject to challenge through a writ of

mandamus to review and thus cannot be disturbed unless it is arbitrary and capricious.").  Thus,

plaintiff's interest in the teaching licenses constitutes no more than a mere unilateral expectation.

As a result, that interest is not protected by the Fourteenth Amendment, and plaintiff fails to state

a claim for due process violations under Section 1983.

Nevertheless, the court notes that plaintiff was afforded procedural protections during the

licensing process.  The denial of his application for licenses was based on his unsatisfactory rating

as a probationary teacher.  During the pendency of his application, he was given the opportunity to

review that rating with the Dept. of Education's Office of Personnel Investigation.  In addition, he

was given the opportunity to appeal the denial of his application.

### b.    Intentional Discrimination on the Basis of National Origin

Intentional discrimination, by a State employer, on the basis of national origin constitutes a

denial of equal protection in violation of the Fourteenth Amendment.  Plaintiff's only allegation of

such discrimination is in connection with his termination from Carter G. Woodson Elementary

School.  (He attributes his other terminations and the denial of his application for teaching licenses

to retaliation for his filing of charges with the EEOC, which theory cannot sustain an equal

protection claim.)  Plaintiff's termination from Carter G. Woodson Elementary School occurred on

October 5, 1999. The statute of limitations applicable to claims brought under Section 1983 in New York is three years. *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Patterson*, 375 F.3d at 225. Thus, the statute of limitations expired on October 5, 2002, but this suit was not filed until June 23, 2003. Accordingly, plaintiff's Section 1983 claims arising from his termination from Carter G. Woodson Elementary School are time-barred.

### 2. Section 1981 Claims

Section 1981 outlaws discrimination on the basis of race or alienage with respect to the enjoyment of benefits, privileges, terms, and conditions of any contractual relationship, including employment, and is applicable to a plaintiff complaining of discrimination even during a probationary period of employment. *Patterson*, 375 F.3d at 224-25. For discrimination to be actionable under Section 1981, it must be intentional. *Id.* at 226. Retaliation is also actionable under Section 1981, provided that the retaliation occurred in response to the assertion of rights that are protected by Section 1981. *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 693 (2d Cir. 1998). Although Section 1981's prohibition against racial discrimination encompasses discrimination based on ancestry or ethnic characteristics, it does not encompass discrimination based on national origin. *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998). As with claims brought under Section 1983, the statute of limitations for claims brought under Section 1981 is three years.

Any Section 1981 claim arising from plaintiff's termination from Carter G. Woodson Elementary School is time-barred. But even if timely, such a claim would not be actionable under Section 1981 because the alleged basis for the termination is discrimination based on national origin.

Although the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of origin "is not a bright one," *St. Francis College*, 481 U.S. at 614 (Brennan, J., concurring), plaintiff here complains specifically of discrimination on the basis of his national origin. Plaintiff describes himself as "a native of Nigeria" and a "naturalized United States citizen." First Amended Complaint ¶ 7. In his May 8, 2000 EEOC charge, and throughout the First Amended Complaint, plaintiff alleges that his termination from Carter G. Woodson Elementary School was the result of discrimination based on his national origin. In all of the voluminous submissions plaintiff has made to the court, he has never complained of discrimination based on race, nor of discrimination based on his ethnic characteristics, but has consistently alleged discrimination by the NYC Defendants on the basis of his *national origin*. Accordingly, plaintiff fails to state a claim under Section 1981 for his termination from Carter G. Woodson Elementary School. Since, according to plaintiff, all of the acts of retaliation identified in the First Amended Complaint came in response to the EEOC charge alleging national origin discrimination, those acts likewise fail to give rise to a claim under Section 1981.

### 3. Section 1985 Claims

Section 1985(3) makes it unlawful for persons to conspire to deny someone equal protection of the law or equal privileges and immunities under the law. To state a claim under Section 1985(3), a plaintiff must allege: (1) a conspiracy motivated by invidious discriminatory animus (2) for the purpose of depriving a person or class of persons of the equal protection of the laws or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of

the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). The statute of limitations applicable to claims brought under Section 1985(3) is three years. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). Thus, any Section 1985(3) claim arising from plaintiff's termination from Carter G. Woodson Elementary School is time-barred. Plaintiff's other alleged injuries, which plaintiff asserts are the result of retaliation, are not actionable under Section 1985(3).

## C.    ADA Claim

The ADA limits the right of employers to require employees and prospective employees to submit to medical examinations. 42 U.S.C. § 12112(d). Plaintiff alleges that, on November 8, 2000, the Dept. of Education requested that he submit to a medical examination in violation of the ADA. The ADA incorporates by reference the procedural requirements of Title VII, including the exhaustion of administrative remedies requirement and related limitations periods. 42 U.S.C. § 12117(a). Plaintiff did not include his claim under the ADA in any of the charges that he filed with the EEOC. As a result, it is unexhausted.

An unexhausted claim may be heard by a district court if it is "reasonably related" to allegations contained in a charge that plaintiff filed with the EEOC.[1] *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir. 2003); *Butts v. City of New York Dept. of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir. 1993), *abrogated by statute on other grounds as stated in Hawkins*, 163 F.3d at 693. A claim is considered to be "reasonably related" if it falls into any one of three

---

[1]Such unexhausted claims are subject to the statute of limitations analysis set forth in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

categories. The first category is comprised of claims that would fall within the scope of the EEOC investigation that could reasonably be expected to grow out of the charge that was filed. *Deravin*, 335 F.3d at 200-01; *Butts*, 990 F.2d at 1402. Here, it is not reasonable to expect that either the charge filed by plaintiff on April 18, 2002, alleging that plaintiff was terminated from Springfield Gardens High School in retaliation for a prior EEOC charge, or the charge filed by plaintiff on October 11, 2002, alleging that the NYC Defendants denied plaintiff certain teaching licenses and provided a negative reference to the Wildcat Defendants in retaliation for a prior EEOC charge, would have prompted the EEOC to investigate whether the NYC Defendants violated the ADA. Accordingly, plaintiff's ADA claim does not fall into the first category.

The second type of "reasonably related" claim is one alleging retaliation by an employer against an employee for filing an EEOC charge. *Deravin*, 335 F.3d at 201 n.3; *Butts*, 990 F.2d at 1402. Plaintiff's ADA claim is based on allegations that he was asked to submit to unlawful medical examinations, not that he suffered retaliation for complaining of disability discrimination. Accordingly, plaintiff's ADA claim does not fall into the second category.

The third type of "reasonably related" claim is one that alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Deravin*, 335 F.3d at 201 n.3; *Butts*, 990 F.2d at 1402-03. Since none of plaintiff's EEOC charges allege that he was asked to submit to unlawful medical examinations, plaintiff's claims do not fall into this category, either. As a result, plaintiff's unexhausted ADA claim may not be heard by this court.

### D.    *FMLA Claim*

Section 105(a)(1) of the FMLA makes it unlawful for "any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right" provided under the statute. 29 U.S.C. § 2615(a)(1). Plaintiff alleges that the Dept. of Education denied his request for leave to which he was entitled under the FMLA. Although plaintiff does not indicate in the First Amended Complaint when the alleged denial occurred, he does state that he wrote a letter to the Superintendent of Queens High Schools on February 5, 2001 complaining about the denial. Thus, the court may infer that the denial occurred on or before February 5, 2001. Unless an FMLA violation is "willful," the applicable statute of limitations is two years. 29 U.S.C. § 2617(c)(1); *see Porter v. New York University School of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004) (per curiam). An employer acts willfully for purposes of the FMLA when the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by law. *Id.* As in *Porter*, here, "the facts alleged by [plaintiff] cannot conceivably amount to willful behavior." *Id.* at 532. Accordingly, plaintiff's FMLA claim is subject to a two year statute of limitations, which expired on or before February 5, 2003. Since this suit was not commenced until June 23, 2003, plaintiff's FMLA claim is time-barred.

### E.    *State Law Claims*

State notice of claim provisions are matters of substantive state law that must be applied by federal courts to supplemental state claims. *See Felder v. Casey*, 487 U.S. 131, 151 (1988). Where state law specifies a particular notice of claim procedure, federal courts are not free to substitute another procedure. *See, e.g.*, *Jones v. Stancik*, 2004 WL 2287779 (E.D.N.Y. 2004). New York law provides that no legal action may be brought against the Dept. of Education or its employees acting within the scope of their employment unless a notice of claim has been served on the Dept. of

Education within 90 days of the event giving rise to the claim. N.Y. Educ. Law § 3813. In fact, the law requires that the filing of such a notice of claim be affirmatively pleaded in the complaint. N.Y. Educ. Law § 3813(1).

In his report and recommendation dated September 10, 2003, adopted by this court on August 30, 2004, Judge Pohorelsky specifically found that plaintiff failed to serve a timely notice of claim on the Dept. of Education with respect to state law claims that he sought to assert in a proposed third amended complaint in Oparaji II. The last event that forms any part of the basis for plaintiff's state law claims is the withdrawal of the conditional offer of employment by the Wildcat Defendants, which occurred on August 30, 2002. Plaintiff alleges that he served a notice of claim on the Dept. of Education on March 7, 2003, far more than 90 days later. As a result of plaintiff's failure to comply with the state law notice of claim requirement, all state law claims against the NYC Defendants are dismissed.

### III.    Claims against the Wildcat Defendants

#### A.    Title VII Claims

It is not clear from the First Amended Complaint whether plaintiff's Title VII claims against the Wildcat Defendants are based on a theory of discrimination, a theory of retaliation, or both. For the purposes of this motion, the court will assume that it is both. Plaintiff's October 11, 2003 EEOC charge makes the following allegations:

> On or about June 13, 2002 the Human Resources Division of New York City Board of Education denied me license to teach. (See Letter dated June 13, 2002 Signed by Lawrence E. Becker, the Deputy Exec. Director) New York City Board of Education has not only denied me license to teach, but also refused to hire me. In addition, New York City Board of Education has cause prospective employers from hiring me by

giving me negative reference. For example, I applied for a teaching job with WILD CAT ACADEMY. On or about August 26, 2002 I was interviewed by Ashanti Chimurengaand (718-842-4208), and I received a conditional offer subject to a reference check to my former school principal, Dr. Robert Hickson. Thereof, WILD CAT ACADEMY did not call me back and did not hire me. I suspect my former school principal, Dr. Robert Hickson, at Springfield Garden High School of New York City Board of Education, gave me a negative reference in retaliation of my filing of EEOC charges. I believe that the Human Resources Division denied me license to teach, and the principal of Springfield Gerden High School gave me negative reference, because I filed charges against it and refused to drop the charges (Charge Numbers 160A01734 and 160A201167).

Neither the October 11, 2003 EEOC charge, nor the prior charges filed by plaintiff, named the Wildcat Defendants as respondents, nor alleged any wrongdoing on their part.

A Title VII claim against a party who was not named in an EEOC charge may be heard by a district court if there is an "identity of interests" between that party and a party actually named in the charge. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); *Vital v. Interfaith Medical Center*, 168 F.3d 615, 619 (2d Cir. 1999). To determine whether parties possess an identity of interests, a court must weigh four factors: (1) whether the role of the unnamed party could, through reasonable effort by the plaintiff, be ascertained at time of the filing of the EEOC charge; (2) whether the interests of the named party are so similar to the interests of the unnamed party that, for the purpose of obtaining voluntary conciliation and compliance, it would be necessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interests of that party; and (4) whether the unnamed party has in any way represented to the plaintiff that its relationship with the plaintiff must be mediated through the named party. *Id.* Here, none of the factors point toward an identity of interests between the Wildcat Defendants and the NYC Defendants. As a result, plaintiff's unexhausted claims against the Wildcat Defendants may not be heard by this court.

### B.    State Law Claims

#### 1.    Libel and Slander

Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name.  *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001).  Generally, spoken defamatory words constitute slander, and written defamatory words constitute libel.  *Id.*  The elements of a claim for slander under New York law are (1) a defamatory statement of fact that is: (2) false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the degree of fault required by the First Amendment, (6) that either causes special harm or constitutes slander *per se*, and (7) that is not protected by privilege.  *Id.* at 265-66.  A claim for libel requires all of the foregoing elements, plus the expression of the defamatory statement in writing or print.  *See Cella v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).  In addition, New York law requires a plaintiff to plead libel and slander with particularity.  "In an action for libel and slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."  N.Y. C.P.L.R. Rule 3016; *see Bond v. Board of Education*, 1999 WL 151702 (E.D.N.Y. 1999).

Here, the First Amended Complaint does not identify the particular words complained of. In fact, it fails to allege that the Wildcat Defendants published any statement of fact concerning plaintiff to a third party, much less a statement that was false and defamatory.  With respect to the Wildcat Defendants, the First Amended Complaint alleges only that they sought a reference for plaintiff from Hickson.  Even if the reference given was defamatory, the Wildcat Defendants cannot be held liable merely for receiving it.  Accordingly, the First Amended Complaint fails to state a claim of libel or slander against the Wildcat Defendants.

## 2. False Statement

New York does not recognize a tort of "false statement." If plaintiff intended, by this phrase, to assert a claim of defamation, it must be dismissed for the reasons set forth above. Alternatively, if plaintiff intended to assert a claim of fraud, it must be dismissed because plaintiff failed to state any facts from which a fraud could be inferred.

## 3. Abuse of Process

An abuse of process claim will lie under New York law where a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001); *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Assoc., Inc.*, 38 N.Y.2d 397, 403 (1975). Since the Wildcat Defendants have not caused any process to issue against plaintiff, plaintiff cannot state a claim against them for abuse of process.

## 4. Intentional Infliction of Emotional Distress

Under New York law, a claim for intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). To satisfy the first element, the conduct at issue must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."

Restatement (Second) of Torts § 46 cmt. d; *accord id.* at 790; *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993). None of plaintiff's allegations concerning the Wildcat Defendants rise to the level of extreme and outrageous conduct. Accordingly, the First Amended Complaint fails to state a claim of intentional infliction of emotional distress against the Wildcat Defendants.

**5.    Violation of Rights Otherwise Guaranteed under the Laws and Constitution of the State of New York**

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is "extremely permissive." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). A plaintiff need only disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). Dismissal under Rule 8 is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. *Id.* Here, plaintiff's final claim alleging "violation of rights otherwise guaranteed to the plaintiff under the laws and constitution of the State of New York" is too vague to provide the Wildcat Defendants with a fair understanding of what plaintiff is complaining about. Accordingly, it fails to satisfy the extremely permissive pleading standard of Rule 8 and must be dismissed. Although the court normally would grant a plaintiff leave to replead before dismissing an *entire complaint* pursuant to Rule 8, given the history of these proceedings and the exhaustive array of other claims set forth in the First Amended Complaint, leave to amend this "catchall" claim is not appropriate.

### 6. Civil Conspiracy

New York recognizes a claim for civil conspiracy only where a plaintiff has demonstrated that an actionable underlying tort was committed. *Alexander & Alexander of New York*, 68 N.Y.2d 968, 969 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."); *see Gmurzynska v. Hutton*, 355 F.3d 206, 211 (2d Cir. 2004). Here, since all of plaintiff's underlying tort claims have been dismissed, the civil conspiracy claim must be dismissed as well.

### IV. Motion for Leave to a File Supplemental Pleading

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense." Fed. R. Civ. P. 15(d). Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

Plaintiff's request to add an additional Title VII claim against individual defendants is denied on the ground of futility because, as discussed above, individuals are not subject to liability under Title VII. *See Tomka*, 66 F.3d at 1313.

Plaintiff's request to add an additional Title VII claim against the Dept. of Education is denied on the grounds of undue delay, bad faith, and prejudice to the defendant. The factual allegations with which plaintiff seeks to supplement the First Amended Complaint concern events

that occurred on and before August 5, 2003. But the First Amended Complaint was not filed until December 8, 2003. Thus, plaintiff's proposed new claim is based on facts that were known to him at the time that he filed the First Amended Complaint. It appears to the court that plaintiff's motion is an attempt to prolong the proceedings and to burden defendants with further costs and delays. Given that plaintiff failed to raise the proposed new claim in the First Amended Complaint despite being aware of the relevant facts at the time that he filed the First Amended Complaint; that all of the other Title VII claims asserted by plaintiff in this action against the Dept. of Education are duplicative of claims asserted by plaintiff in Oparaji I and II; that plaintiff was prohibited from adding additional claims to those lawsuits as a sanction for attempting to commit a fraud upon the court; that the instant motion constitutes plaintiff's sixth motion to amend or supplement pleadings in the three different actions for employment discrimination that he has pending against the Dept. of Education; that plaintiff's motion was made during the pendency of a motion to dismiss; and that plaintiff previously moved to amend his complaint in this action while a motion to dismiss was pending (which motion to amend was granted, rendering the prior motion to dismiss moot), the court exercises its discretion to deny plaintiff's motion to file a supplemental pleading. To allow plaintiff to add an additional claim at this late date, given the history of these proceedings, would unduly prejudice the Dept. of Education and cause an unjustifiable delay in the resolution of this matter.

**CONCLUSION**

For the reasons set forth above, the Wildcat Defendants' motion to dismiss the original complaint is dismissed as moot. The Wildcat Defendants' motion to dismiss the First Amended Complaint is granted in its entirety; the NYC Defendants' motion to dismiss the First Amended

Complaint is granted in its entirety; and plaintiff's motion for leave to file a supplemental pleading

is denied.  The Clerk of Court is directed to close this case.


**SO ORDERED.**


_____/S/_____
**NINA GERSHON**
**United States District Judge**


Dated: Brooklyn, New York
        June 14, 2005